**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| ZombieBox International Incorporated,<br>Plaintiff,<br>v.<br>Generac Power Systems Incorporated,<br>Defendant. | No. CV-23-00726-PHX-ROS<br>**ORDER** |

Before the Court is Defendant Generac Power System Inc.'s ("Generac") Motion for Partial Summary Judgment, (Doc. 88), accompanied by Generac's Statement of Material Facts in Support of Summary Judgment, (DSOF, Doc. 90), and Joint Stipulation of Undisputed Material Facts, (JSOF, Doc. 89). Plaintiff ZombieBox International Inc. ("ZombieBox") filed a Response, (Doc. 95), Controverting Statement of Facts, (CSOF, Doc. 96), and Response to Defendant's Statement of Facts, (RSOF, Doc. 97). Generac filed a Reply, (Doc. 104), and Responses and Objections to ZombieBox International Inc.'s Controverting Statement of Facts, (Doc. 105).

Also before the Court is ZombieBox's Motion to Strike Exhibit A of Defendant's Reply Brief and Defendant's Responses and Objections to Plaintiff's Controverting Statement of Facts, (Doc. 108), to which Generac filed a Response, (Doc. 109), and ZombieBox filed a Reply, (Doc. 110).

These Motions will be decided without oral argument. *See* LRCiv 7.2(f). For the reasons that follow, ZombieBox's Motion to Strike will be denied in part as to striking

Exhibit A and otherwise granted in part; and Generac's Motion for Partial Summary Judgment will be denied.

## I. BACKGROUND

All facts set forth below are undisputed or not subject to reasonable dispute based on proffered admissible evidence unless otherwise noted.

Plaintiff ZombieBox develops and sells generator enclosures, known as "ZombieBoxes," meant to reduce the noise produced by a generator. (JSOF ¶ 3.) Defendant Generac is one of the world's largest manufacturers of generators. (*Id.* ¶ 2.) Generac's generators come with a limited warranty that does not cover, *inter alia*, "[d]amage to the generator . . . due to the use of non-Generac parts and/or equipment," as well as "[p]roducts that are modified or altered in a manor [sic] not authorized by Generac in writing." (*Id.* ¶ 15.)

Since at least 2019, ZombieBox has known that Generac does not approve of the use of a ZombieBox enclosure for its generators, (*id.* ¶ 16), and that Generac believes use of a ZombieBox enclosure conflicts with Generac's statement of warrantability (*id.* ¶ 6). In 2020, Generac told ZombieBox its enclosures interfere with and impede access to a safety feature (an auxiliary shutdown switch) located on the exterior of Generac's generators. (*Id.* ¶ 17.)

Between 2021 and 2023, Generac employees made multiple statements related to the use of Generac generators with a ZombieBox enclosure. In June 2021, Brandon Ruybe, a Generac Regional Development Manager, received an email from Schafer Electric, an installer of Generac generators, regarding a new part developed for the ZombieBox enclosure that "is making the [Generac] generator much quieter and allowing a lot of [sic] more airflow and heat to come out." (*Id.* ¶ 27.) Ruybe forwarded Schafer Electric's email to Erik Anderson, Generac's Vice President of Wholesale Sales, and noted Schafer Electric, which had previously used ZombieBox enclosures, was having trouble installing several generators due to noise ordinances and had threatened to stop installing Generac generators. (*Id.* ¶ 29.) Ruybe further stated: "We as a company have somewhat slandered

[the ZombieBox enclosure] for the dangers of overheating the unit and potential carbon monoxide liability." (*Id.* ¶ 28.)

In December 2021, Golden State Power Solutions ("Golden State") emailed Ned Johns, a Generac Technical Application Manager, asking for suggestions about meeting noise ordinances for generator installations and indicating that Golden State had been selling ZombieBox enclosures. (*Id.* ¶¶ 32–33.) In response, Johns told Golden State that Generac does not approve of the use of ZombieBox enclosures with its generators due to "issues with internal enclosure temperatures and related complications with air-flow—which have contributed to failure in the field."[1] (*Id.* ¶ 34.) Johns further advised Golden State that "a Zombie box or similar installation will void Generac warranty." (*Id.*)

On July 27, 2022, Clark Home Solutions emailed Dominic Graziano, a Generac Territory Development Manager, stating it had a customer "looking to buy [a generator] that wants to know if she gets a Zombie Box, will it affect performance or the Generac warranty." (*Id.* ¶ 36.) Graziano responded: "I have confirmed that this will void the warranty." (*Id.* ¶ 37.)

On November 29, 2022, Lake Katonah Electric emailed Graziano asking about ZombieBox enclosures, to which Graziano responded that they "tend to overheat. I [had heard] from the council 3 generators overheated to the point of failure using these."[2] (*Id.* ¶ 41.)

At Generac's 2023 Annual Conference in January 2023, which hosted thousands of attendees, Generac gave a presentation where it displayed a slide titled "HALL of ~~Fame~~ SHAME" showing a picture of a ZombieBox enclosure with a large red slash across it. (*Id.* ¶¶ 42–44.) This slide also depicted an email from ZombieBox advising a Generac customer to first remove the ZombieBox enclosure before they submit a warranty claim to Generac.[3]

[1] Johns testified that "he is not personally aware of any instances where a ZombieBox has caused a Generac generator to fail" but believes he heard about such instances from others. (JSOF ¶ 35.)

[2] The bracketed modifications to Graziano's statement were stipulated to by the parties. (*See* Doc. 91-1 at 57.) It originally stated: "I hand heated from the council 3 generators overheated . . . ." It is also not apparent what "council" Graziano refers to.

[3] Generac argues this email shows ZombieBox encouraged a Generac dealer to commit warranty fraud, so Generac's response was justified and privileged. (Doc. 88 at 14.) The

(*Id.* ¶ 44.)

On February 2, 2023, Wray Electric emailed Johns about solutions for dealing with noise ordinance. (*Id.* ¶ 45.) Johns responded: "Please be aware of the product manufacturer 'Zombiebox'—their product can negatively impact the long-term performance of our air-cooled generators, and they have NOT done third party NRTL [Nationally Recognized Testing Laboratory] testing to provide proven performance with the listing requirements of Generac generators." (*Id* ¶ 46.)

Despite Generac's statements that using a ZombieBox enclosure conclusively voids Generac's warranty, there is conflicting evidence as to whether this is true. On June 17, 2021, Amanda Olivares, a Generac Supervisor for Resolution Escalations, told AC/DC Industrial Electric: "If it helps, we do not ever void warranties, and will still cover any repair we can't PROVE was caused by the box."[4] (*Id.* ¶ 38.) Prior to this lawsuit, Generac has processed at least one warranty claim for a customer who used a ZombieBox enclosure over the generator. (*Id.* ¶ 39.)

There is also conflicting evidence as to the safety[5] of using a ZombieBox enclosure with Generac's air-cooled generators. ZombieBox asserts that its "in-house testing showed its enclosures had a nominal effect on the temperature of the generators that would not impact the generator's operation." (CSOF ¶ 5.) ZombieBox also points to testing performed by two independent companies, which "concluded the temperature of a Generac generator enclosed in a ZombieBox was 'well below the 293°F auto shutdown threshold,'' and "found

Court does not reach this issue. However, Generac's statements that using a ZombieBox enclosure automatically voids Generac's warranty, even if the enclosure did not cause damage, arguably misrepresents Generac's warranty as discussed *infra*. As such, another possible explanation for ZombieBox's advice about removing the enclosure could be to prevent Generac from unjustifiably voiding its own warranty.

[4] Olivares's statement can be reasonably interpreted as referencing the provision of Generac's warranty excluding coverage for "[d]amage to the generator . . . due to the use of non-Generac parts and/or equipment."

[5] Generac argues that a ZombieBox enclosure makes Generac's generators noncompliant with applicable safety codes by impeding access to the generator's auxiliary shutdown switch and reducing the clearance around the generator. (SOF ¶¶ 13–17.) Because Generac's statements to third parties regarding the risks to a generator specifically concern the asserted lack of airflow that could overheat the generator, the Court reasonably interprets Generac's arguments about rendering generators noncompliant with safety codes as related to the statements about ZombieBox enclosures voiding Generac's warranty.

a ZombieBox enclosure increased the internal oil temperature of a Generac generator by 9°F, from 214°F to 223°F, which was still within the normal range for air cooled engines." (*Id.* ¶¶ 8–10.) Generac suggests that, as "a secondary enclosure," a ZombieBox enclosure "by its very nature restricts ventilation around and about the front, sides, and back" of a generator. (Doc. 91-1 at 18.) This restriction of airflow, Generac contends, "prevent[s] the normal convective heat removal from the generator as it was designed, tested and manufactured." (*Id.* at 21.) However, apart from Graziano's statement that he "had heard" of three generators overheating, (JSOF ¶ 41), Generac did not conduct any in-house or third-party testing regarding the degree of airflow restriction and associated increase in temperature, or whether any asserted generator damage had clearly been caused by a ZombieBox enclosure.

## II. PLAINTIFF'S MOTION TO STRIKE

"[A] motion to strike may be filed . . . if it seeks to strike any part of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule, or court order." LRCiv.7.2(m). "The decision to grant or deny a motion to strike is within the court's discretion." *Sunburst Minerals, LLC v. Emerald Copper Corp.*, 300 F. Supp. 3d 1056, 1059 (D. Ariz. 2018).

ZombieBox's Motion to Strike concerns two documents filed alongside Generac's Reply to its summary judgment motion—Generac's Responses and Objections to ZombieBox International Inc.'s Controverting Statement of Facts, (Doc. 105); and Exhibit A, a one-page attachment to the Reply, (Doc. 104-1).

### A. Generac's Responses and Objections

Rule 7.2(m)(2) of the Local Rules of Civil Procedure states:

> An objection to (and any argument regarding) the admissibility of evidence offered in support of or opposition to a motion must be presented in the objecting party's responsive or reply memorandum and ***not in a separate motion to strike or other separate filing***. If the underlying motion is a motion for summary judgment, an objection may be included in a party's response to another party's separate statement of material facts in lieu of (or in addition to) including it in the party's responsive memorandum, but any objection in the party's response to the separate statement of material facts must be stated summarily without argument. ***Any response to an objection must be included in the responding party's reply memorandum for the underlying***

***motion and may not be presented in a separate responsive memorandum.*** LRCiv 7.2(m)(2) (emphasis added).

Here, Generac filed Responses and Objections to ZombieBox's Controverting Statement of Facts separately from its Reply, which ZombieBox argues is impermissible under LRCiv 7.2(m)(2).

Generac cites one case where the Court has permitted the moving party on summary judgment to file a separate reply statement of facts. *See Morton v. ALS Servs. USA Corp.*, No. CV-11-00946-PHX-DGC, 2012 WL 3578857, at *6 (D. Ariz. Aug. 20, 2012) ("Objections to the non-moving party's responsive statement of facts may be set forth in a separate reply statement of facts where they do not introduce new facts or evidence." (citing LRCiv 7.2(m)(2))). In *Morton*, the Court struck the moving party's "supplemental statement of facts" filed with its reply because it "introduce[d] facts from the record not previously presented in its motion." *Id.* However, the Court declined to strike the moving party's "response to [the non-moving party's] separate statement of facts" because it "merely respond[ed] to facts presented by [the non-moving party] and does not cite to new facts." *Id.*

However, *Morton* is contrary to the majority of cases where the Court has held the opposite—that LRCiv 7.2(m)(2) only permits the non-moving party to file a separate responsive statement of facts. *See, e.g.*, *Mora v. Circle K. Stores, Inc.*, No. CV-23-01815-PHX-SPL, 2024 WL 4459374, at *1 (D. Ariz. Apr. 23, 2024) ("The portion of LRCiv 7.2(m)(2) which Defendants emphasize give Plaintiff's [sic] (the non-moving party) the right to file an objection in their separate statement of facts, not Defendants as they filed the underlying Motion."); *Khalaj v. City of Phoenix*, No. CV 17-01199-PHX-GMS, 2022 WL 21296196, at *2 n.1 (D. Ariz. May 26, 2022) ("Rule 7.2(m)(2) provides that a nonmovant may present objections to the movant's separate statement of material facts either in its response to the party's separate statement of material facts or in the party's responsive memorandum. Any response to those objections must be included in the movant's reply memorandum, not a separate filing."); *EEOC v. AutoZone, Inc.*, No. 06-

CV-0926-PHX-SMM, 2008 WL 2509302, at *1 (D. Ariz. June 19, 2008) ("The Local Rules do not authorize a separate Statement of Facts in the Reply as they explicitly do for a Response."); *Kinnally v. Rogers Corp.*, No. CV-06-2704-PHX-JAT, 2008 WL 5272870, at *2 (D. Ariz. Dec. 12, 2008) ("The Local Rules do not contemplate attaching additional exhibits to replies in support of summary judgments or filing a separate response to the non-moving party's statement of facts. This is consistent with the moving party's need to show no genuine issue of material facts exists and that there is no need for a trier of fact to weigh conflicting evidence, assuming the non-moving party's evidence is true." (citation modified)); *Hunton v. Am. Zurich Ins. Co.*, No. CV-16-00539-PHX-DLR, 2018 WL 1182552, at *5–6 (D. Ariz. Mar. 7, 2018) (same). The Court concurs with the majority of cases that interpret LRCiv 7.2(m) as prohibiting a summary judgment movant from filing a separate reply statement of facts, even if the separate filing does not introduce new facts and merely responds or objects to the non-moving party's statement of facts. As such, the Court will strike Generac's Responses and Objections to ZombieBox International Inc.'s Controverting Statement of Facts and not consider it in ruling on the summary judgment motion.

**B. Exhibit A**

Exhibit A is a one-page table attached to Generac's Reply in support of its summary judgment motion. (Doc. 104-1.) In its Reply, Generac stated its reason for attaching Exhibit A:

> Zombiebox did not include complete quotations of the accused statements in its brief or statement of facts. Complete quotations of accused statements AS-1–AS-7 are included in Exhibit A. Exhibit A excludes the statement based on ZB-SOF #11, because it is inadmissible hearsay not subject to any exception.

(Doc. 104 at 3 n.6.)

ZombieBox argues that "Generac's Exhibit A to its reply brief . . . serve[s] to introduce additional argument beyond the reply page limit." (Doc. 108 at 3.) First, ZombieBox objects to Generac's assertions in Exhibit A that statements AS-1 through AS-5 were "[i]n response to an inquiry," (Doc. 104-1 at 2), "to support the argument in its

original motion that each statement is privileged," (Doc. 108 at 4). This is not new argument. Generac's Motion for Partial Summary Judgment is largely premised on Generac's argument that the alleged statements were privileged as "responses to questions" from third parties. (Doc. 88 at 13.) And even if there is a genuine dispute as to whether these statements were in fact privileged, it is undisputed that these statements were responses to third-party inquiries. The Joint Stipulation of Undisputed Material Facts and associated exhibits clearly contextualize statements AS-1, (JSOF ¶¶ 36–37; Doc. 91-1 at 59), AS-2, (JSOF ¶¶ 40–41; Doc. 91-1 at 62–63), AS-3, (JSOF ¶¶ 32–34; Doc. 91-1 at 86), and AS-4, (JSOF ¶¶ 45–46; Doc. 91-1 at 69–70), as statements made in response to third-party inquiries as summarized in Exhibit A. Furthermore, ZombieBox's own Controverting Statement of Facts and associated exhibits frame statement AS-5 as a response to an inquiry precisely as described in Exhibit A. (CSOF ¶¶ 12–13; Doc. 99-4 at 2–3.)

Plaintiff further objects on the ground that "Generac adds statements about third party NRTL testing" to AS-4 and AS-7, as well as "an email from ZombieBox" in AS-6, "which are not the defamatory statements at issue." (Doc. 108 at 4.) This also is not new argument or evidence—these statements are directly drawn from the Joint Stipulation of Undisputed Material Facts and associated exhibits, (JSOF ¶¶ 44, 46; Doc. 91-1 at 67, 69), or from ZombieBox's Controverting Statement of Facts, (CSOF ¶ 14). It may well be that ZombieBox does not assert these particular portions of the statements are defamatory. But their inclusion is not improper when the statements in their entirety have already been submitted as undisputed evidence. As such, ZombieBox will not be prejudiced, and the Court will deny its request to strike Exhibit A to Generac's Reply (Doc. 104-1).

## III. GENERAC'S SUMMARY JUDGMENT MOTION

Summary judgment is granted if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial responsibility of presenting the basis for its motion and

identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The non-moving party must then point to specific facts establishing there is a genuine issue of material fact for trial. *Id*.

At summary judgment, the Court considers only admissible evidence. *See* Fed. R. Civ. P. 56(c)(1)(B). When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of material fact exists "if the [admissible] evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248. In ruling on the motion for summary judgment, the Court will construe the evidence in the light most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).

In its Fourth Amended Complaint, ZombieBox asserts claims for defamation, trade libel/commercial disparagement, and tortious interference with existing and prospective contractual relations. (Doc. 25.) Generac moves for summary judgment on all three claims, arguing (1) Generac's statements in response to third-party inquiries or addressing ZombieBox's encouraging others to submit false warranty claims to Generac are not defamatory; (2) ZombieBox has no evidence that Generac's statements caused its claimed damages; (3) ZombieBox's claims do not pass First Amendment scrutiny[6]; (4) Generac's statements were privileged and not abused through malice or excessive publication; and (5) Generac's statements were not improper and there is no evidence of lost business expectancies. (Doc. 88 at 2–4.)

**A. Defamation & Trade Libel**

"In Arizona, defamation requires: (1) a false [and defamatory] statement; (2)

[6] Generac argues that ZombieBox "must present evidence 'sufficient to establish a prima facie case with *convincing clarity*.'" *Sign Here Petitions LLC v. Chavez*, 402 P.3d 457, 462 (Ariz. Ct. App. 2017) (quoting *Read v. Phoenix Newspapers, Inc.*, 819 P.2d 939, 942–43 (Ariz. 1991)). In its Notice of Supplemental Authority, (Doc. 100), ZombieBox submits *Miller v. Sawant*, 18 F.4th 328 (9th Cir. 2021). In *Miller*, the Ninth Circuit noted that "a federal court must apply Federal Rule of Civil Procedure 56, rather than a state's heightened summary judgment standard, to claims arising under state law." *Id.* at 337 n.10. As such, the convincing clarity standard does not apply here.

published to a third party; where (3) the defendant (a) knew the statement was false and defamatory or (b) recklessly disregarded or negligently failed to ascertain the truth or defamatory nature of the statement." *ZombieBox Int'l Inc. v. Generac Power Sys. Inc.*, 721 F. Supp. 3d 798, 804 (D. Ariz. 2024) (citing *Dube v. Likins*, 167 P.3d 93, 104 (Ariz. Ct. App. 2007)). "To be defamatory, a [false] publication . . . must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Dube*, 167 P.3d at 105 (quoting *Turner v. Devlin*, 848 P.2d 286, 288–89 (Ariz. 1993)). "Whether a statement is capable of defamatory meaning is a question of law for the court, but whether the meaning conveyed was defamatory is a question for the jury." *Id.* at 106 (citing *Yetman v. English*, 911 P.2d 323, 331 (Ariz. 1991)).

Trade libel is "often analyzed under the same standard" as defamation but instead requires that the intentional and false publication "disparag[ed] the quality of another's property" and "result[ed] in pecuniary loss." *ZombieBox*, 721 F. Supp. 3d at 804 (citing *Gee v. Pima Cnty.*, 612 P.2d 1079, 1079 (Ariz. Ct. App. 1980)). Here, the defamation and trade libel claims completely overlap, both alleging that Generac's statements tarnished ZombieBox's reputation by disparaging the quality of their product and resulted in lost sales, so the Court analyzes both the defamation and trade libel claims together.

Broadly, ZombieBox's defamation and trade libel claims encompass two categories of alleged statements by Generac: (1) statements that using a ZombieBox enclosure risks damaging the generator, and (2) statements that using a ZombieBox enclosure voids Generac's warranty. The Court considers each category of statements in turn.

**1. Risk Statements**

The first category of alleged defamatory statements concerns Generac's statements to third parties regarding the risk of generator damage posed by using a ZombieBox enclosure. Generac does not argue these statements are incapable of carrying a defamatory meaning. Rather, Generac argues they are not false and thus Generac cannot be liable for defamation or trade liable based on these statements. Specifically, Generac contends it is undisputed that: (1) ZombieBox "never had its product tested by a Nationally Recognized

Test Lab ("NRTL")"; (2) ZombieBox "did no third-party testing until after initiating this litigation (meaning all the accused statements came before such testing);" and (3) "customers reported damage and/or overheating" from using a ZombieBox. (Doc. 104 at 5.)

ZombieBox does not dispute that its testing was not conducted by a NRTL, but it nevertheless contends that it conducted in-house and third-party testing showing the use of a ZombieBox enclosure does not pose a material risk of damage to generators. Generac's arguments against the quality of testing performed by ZombieBox and whether the temperature increase from using a ZombieBox enclosure damages a generator do not establish, as a matter of law, the truth of Generac's statements that a ZombieBox enclosure "suffocates" a generator, (CSOF ¶ 13), and makes it so generators "tend to overheat," (JSOF ¶ 41). The truth of Generac's statements regarding the potential damage caused by ZombieBox enclosures are factual disputes to be resolved by the jury.

**2. Warranty Statements**

The second category of alleged defamatory statements concerns Generac's statements to third parties that using a ZombieBox enclosure "absolutely," (CSOF ¶ 13), or conclusively "will" void Generac's warranty (JSOF ¶ 37). There are two pertinent provisions of Generac's warranty policy: it does not cover (1) "[p]roducts that are modified or altered in a manor [sic] not authorized by Generac in writing"; and (2) "[d]amage to the generator . . . due to the use of non-Generac parts and/or equipment." (*Id.* ¶ 15.)

Generac argues its "statements about its own warranty policy—even if legally imprecise—are not statements 'concerning Plaintiff' much less defamatory." (Doc. 104 at 6.) Even if one considers this as a statement of opinion (rather than a fact that using a ZombieBox enclosure will void Generac's warranty), "statements of opinion are actionable when they 'imply a false assertion of fact.'" *Turner*, 848 P.2d at 293 (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18–19 (1990)). Based on the terms of Generac's policy, a reasonable reader could reach two conclusions for why Generac believes a ZombieBox enclosure *will* void the warranty—either the enclosure constitutes a "modification" or

"alteration" of the generator, or the enclosure will indisputably damage the generator.[7] The latter conclusion would mean Generac's "opinion" implies an assertion of fact that disparages the quality of ZombieBox's product. Whether this defamatory meaning was in fact communicated and whether the implied assertion was false are questions reserved for the jury.

Additionally, Generac notes that ZombieBox itself stated on its website that using a ZombieBox enclosure "may alter or void your manufacturers [sic] warranty." (JSOF ¶ 10.) But this is not equivalent to Generac stating that using a ZombieBox enclosure "absolutely" or conclusively "will" void Generac's warranty. The distinction between *possibly* voiding the warranty and *conclusively* voiding the warranty is important, and it certainly constitutes more than a mere "technical inaccurac[y]" as Generac suggests. *Lundin v. Discovery Commc'ns Inc.*, 352 F. Supp. 3d 949, 962 (D. Ariz. 2018); *see Desert Palm Surgical Grp., P.L.C. v. Petta*, 343 P.3d 438, 449 (Ariz. 2015) ("[A] technically false statement may nonetheless be considered substantially true if, viewed through the eyes of the average reader, the statement differs from the truth only in insignificant details."). First, a statement that using a ZombieBox enclosure *may* void Generac's warranty could reasonably be construed as an opinion, particularly coming from ZombieBox as it lacked personal knowledge as to how Generac internally handled warranty claims. Second, if a ZombieBox enclosure is not a "modification" or "alteration" of a generator that instantly voids Generac's warranty upon installation, then representing that a ZombieBox *may* void Generac's warranty could reasonably be construed by a reader as a factually true statement about Generac's warranty. In other words, using a ZombieBox enclosure voids Generac's warranty if—but only if—the enclosure causes damage to the generator.

Lastly, to the extent that Generac argues that the Court should decide, as a matter of law, that a ZombieBox enclosure is a "modification" or "alteration" of the generator that

[7] As previously noted, there is evidence that Generac internally viewed the "damage" provision (rather than the "modification" provision) as relevant to warranty claims involving ZombieBox enclosures, as one employee stated Generac "will still cover any repair we can't PROVE was caused by the box." (JSOF ¶ 38.)

voids Generac's warranty under the plain meaning of its policy, this is rejected.[8] It is undisputed that a ZombieBox enclosure does not change the internal components of, or make contact with, a generator, and Generac does not clearly suggest where the line should be drawn for when an external object becomes a "modification" or "alteration." Is a shade over a generator, covering it on the top but leaving the sides exposed, a modification? In Generac's opinion, the answer is "no," as it told one inquirer that a hypothetical cover "that does not constrict the units [sic] airflow would most likely not void [the] warranty." (Doc. 107-3 at 3.)[9] Based on this, a reasonable person could conclude Generac believes that a cover only "modifies" or "alters" the generator if it obstructs the generator's airflow. But Generac's warranty policy is silent as to any such definition. Moreover, this definition appears to conflate the warranty's modification provision with the damage provision—that is, a cover is only a "modification" if it obstructs the generator's airflow and causes damage. *See Norman v. Recreation Ctrs. of Sun City, Inc.*, 752 P.2d 514, 517 (Ariz. Ct. App. 1988) (noting that courts generally "do not construe one provision in a contract so as to render another provision meaningless" (citing *Tucker v. Byler*, 558 P.2d 732, 735 (Ariz. Ct. App. 1976))). In any event, because Generac's statements about its warranty are capable of at least one false and defamatory interpretation, it remains for the jury to decide whether a false and defamatory meaning was communicated under the circumstances.

**3. Qualified Privilege Defense**

Defendant asserts its alleged statements were qualifiedly privileged and therefore not actionable. "Arizona law establishes a two-part analysis for determining whether a qualified privilege exists." *Green Acres Tr. v. London*, 688 P.2d 617, 624 (Ariz. 1984).

First, the Court must determine as a matter of law whether a privileged occasion

---

[8] In its Reply, Generac asserts that ZombieBox "does not dispute that its product *alters* an enclosed Generac generator." (Doc. 104 at 6.) But in ZombieBox's Response, it expressly contests this point: "ZombieBox's enclosures do not modify the generator." (Doc. 95 at 6.) If Generac's argument is that there is some meaningful difference between the words "modify" and "alter," this argument is unfounded. *Compare Modify*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2003) ("to make minor changes in"), *with Alter*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2003) ("to make different without changing into something else").

[9] The Court finds good cause to partially lift the seal on these exhibits as to only the quoted portion here.

arose. *Id.* (citing *Roscoe v. Schoolitz*, 464 P.2d 333 (Ariz. 1970)). "To establish that a privileged occasion arose, a defamation defendant must establish that the circumstances in which the communication was made created an obligation to speak." *Id.* (citing *Roscoe*, 464 P.2d at 336).

Second, "[w]hether the occasion for the privilege was abused is a question of fact for the jury." *Id.* Plaintiff bears the burden to "prove an abuse of that privilege either by proving publication with 'actual malice' or by demonstrating excessive publication." *Id.* (first citing *Selby v. Savard*, 655 P.2d 342 (1982); and then citing Restatement (Second) of Torts §§ 600, 604 (A.L.I. 1965)). "An abuse through 'actual malice' occurs when the defendant makes a statement knowing its falsity or actually entertaining doubts about its truth." *Id.* "Abuse through excessive publication results from publication to an unprivileged recipient not reasonably necessary to protect the interest upon which the privilege is grounded." *Id.*

Here, a privileged occasion arose in the context of Generac's responses to third-party business inquiries.[10] Arizona follows the Restatement (Second) of Torts, "allowing qualified immunity for a speaker when seeking to protect his own interests, as well as those of others, when speaking to an audience that serves the 'lawful protection of the interest.'" *Burns v. Davis*, 993 P.2d 1119, 1127 (Ariz. Ct. App. 1999) (quoting Restatement (Second) of Torts § 594)). Here, Generac's statements about ZombieBox's product were made in response to business inquiries under the "reasonable belief" that "the recipient's knowledge of the defamatory matter will be of service in the lawful protection of" Generac's "sufficiently important interest" in warning its customers against inadvertently damaging

[10] ZombieBox disputes whether a privileged occasion arose only as to Generac's "unsolicited comments to dealers who had not even asked about ZombieBox." (Doc. 95 at 8.) As to one of these comments, the inquirer had asked "about suggestions for meeting noise ordinances for the installation of a generator" and "indicated . . . that it has been selling ZombieBox's products." (JSOF ¶ 32–34.) This is likely to sufficient to warrant Generac's response directly addressing ZombieBox. As to the other comment, which is the most recent alleged defamatory statement, Generac was asked about "solutions for dealing with noise ordinances." (*Id.* ¶ 45.) Although Generac was not specifically asked about a ZombieBox enclosure, a jury could find its reference to ZombieBox in responding to this inquiry was not unusual given the numerous prior inquiries suggesting that a ZombieBox enclosure was one of the primary options considered by third parties concerned with generator noise.

their generator and voiding their warranty. Restatement (Second) of Torts § 594.

Because the Court has determined a privileged occasion arose, whether Generac abused this privilege is a matter left to the jury. ZombieBox has proffered sufficient evidence by which a reasonable jury could find Generac acted with actual malice because it either knew its statements were false or entertained doubts about their truth. Multiple current and former Generac employees testified that they "could not recall a single instance of a ZombieBox enclosure causing a generator to overheat or other damage to a generator." (CSOF ¶ 21.) Additionally, Generac's employees acknowledged they could not void the warranty simply because a customer used a ZombieBox enclosure, (*id.* ¶ 24), and Generac would simply "make a notation in the warranty file and then evaluate whether any damage or failure was the result of a ZombieBox enclosure" (*id.* ¶ 25). As such, there is enough evidence for a jury to find Generac at least entertained doubts about the truth of its statements that using a ZombieBox enclosure poses risks to a generator or voids Generac's warranty.

**4. Substantial Truth Defense**

Generac moves for summary judgment on its substantial truth defense. A statement is substantially true and thus not actionable "as long as the 'gist' or 'sting' of the publication is justified." *Lundin v. Discovery Commc'ns Inc.*, 352 F. Supp. 3d 949, 960 (D. Ariz. 2018), *aff'd*, 796 F. App'x 942 (9th Cir. 2020) (quoting *Read v. Phoenix Newspapers, Inc.*, 819 P.2d 939, 941 (Ariz. 1991)). "In other words, 'a technically false statement may nonetheless be considered substantially true if, viewed through the eyes of the average reader, the statement differs from the truth only in insignificant details.'" *Id.* (quoting *Desert Palm Surgical Grp., P.L.C. v. Petta*, 343 P.3d 438, 449 (Ariz. 2015)). When "the underlying facts are undisputed, the determination of substantial truth is a matter for the court." *Fendler v. Phoenix Newspapers Inc.*, 636 P.2d 1257, 1262 (Ariz. Ct. App. 1981).

Here, there are disputed admissible facts that preclude summary judgment on this defense. Generac's statements regarding the risks posed by using a ZombieBox enclosure cannot be substantially true if there was no such risk. Moreover, Generac's statements

about its warranty cannot be substantially true if there was only a *possibility* that using a ZombieBox could void Generac's warranty—the difference between voiding the warranty immediately upon installation of a ZombieBox enclosure and voiding the warranty only if a ZombieBox enclosure caused damage is clearly more than an insignificant detail.

**B. Tortious Interference Claim**

"Tortious interference with contract or business expectancy has five elements under Arizona law: (1) the existence of a valid contractual relationship or business expectancy; (2) defendant's knowledge of the relationship or expectancy; (3) defendant's intentional interference in inducing or causing the breach; (4) defendant's interference must be improper; and (5) resulting damages." *Wolf Designs LLC v. Five 18 Designs LLC*, 635 F. Supp. 3d 787, 799 (D. Ariz. 2022) (citing *Health Indus. Bus. Commc'ns Council Inc. Animal Health Inst.*, 481 F. Supp. 3d 941, 958 (D. Ariz. 2020)). Additionally, because Plaintiff's tortious interference claim is based on the same conduct or statements as its defamation claim, the tortious interference claim is not actionable unless Defendant can be held liable for defamation. *Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 821 (9th Cir. 2002) ("[T]he constitutional requirements for defamation 'must equally be met for a tortious interference claim based on the same conduct or statements'; otherwise 'a plaintiff may . . . avoid the protection afforded by the Constitution . . . merely by the use of creative pleading." (quoting *Beverly Hills Foodland, Inc. v. United Food & Com. Workers Union, Local 655*, 39 F.3d 191, 196 (8th Cir. 1994))).

Generally, the question of whether a defendant's interference was improper[11] "is one of fact and not law, but [a court] may resolve the issue as a matter of law when there

[11] Arizona courts consider seven factors in assessing whether a particular action is improper:

(a) the nature of the actor's conduct,
(b) the actor's motive,
(c) the interests of the other with which the actor's conduct interferes,
(d) the interests sought to be advanced by the actor,
(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
(f) the proximity or remoteness of the actor's conduct to the interference and
(g) the relations between the parties.

*Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1042 (Ariz. 1985) (citing Restatement (Second) of Torts § 767).

is no reasonable inference to the contrary in the record." *Neonatology Assocs., Ltd. v. Phoenix Perinatal Assocs. Inc.*, 164 P.3d 691, 694 (Ariz. Ct. App. 2007). "A business-driven motive, in and of itself, is not an improper motive." *Id.* at 695.

Generac argues ZombieBox "cannot demonstrate . . . that: (1) Generac's conduct was 'improper' or (2) it had a 'valid contractual relationship or business expectancy,' as opposed to mere hope that certain sales might take place." (Doc. 88 at 19.) The Court disagrees, as there is sufficient evidence to find all five elements for a tortious interference claim are met.

First, for any instance where a customer had already placed an order for a ZombieBox enclosure, there was, under the facts of this case, clearly more than a mere hope that certain sales might take place. ZombieBox's records show that an order for at least one customer had to be refunded based on Generac's alleged statements about its warranty: "refunded order because 'generac said it voids the warranty' couldn't talk [the customer] out of it, since we haven't built it yet I approved the refund." (Doc. 107-5 at 2.)[12] These statements involves two levels of possible hearsay. The first level is the statement from Generac to the customer, which is admissible under Fed. R. Evid. 801(d)(2) as an opposing party's statement. The second level is the statement from the customer to ZombieBox, which, with proper foundation, is admissible as a business record under Fed. R. Evid. 803(6).

Second, when customers expressly questioned Generac about using a ZombieBox, a jury could reasonably find Generac had sufficient knowledge of the customer's intent to purchase and use a ZombieBox (or perhaps that they had already purchased one).

Third, Generac's statements advising against purchasing and using a ZombieBox could reasonably have "induced" the customers to avoid purchasing a ZombieBox or seek a refund under the threat of Generac voiding their warranty. *See* Restatement (Second) of Torts § 766 ("The word 'inducing' refers to the situations in which A causes B to choose one course of conduct rather than another. Whether A causes the choice by persuasion or

[12] The Court finds good cause to partially lift the seal on these exhibits as to only the quoted portion here.

by intimidation, B is free to choose the other course if he is willing to suffer the consequences.”).

Fourth, if a jury finds against Generac on the defamation and trade libel claims, then the jury could also find Generac was not merely protecting its business interests and that its defamatory statements constitute improper interference. *See Stoyanof v. Crocodiles Not Waterlillies, L.L.C.*, No. CV 11-00384-HWG, 2012 WL 13024085, at *10 (D. Ariz. Feb. 16, 2012) (noting defamation and intentional interference claims “may involve the same underlying conduct” but “are designed to redress separate injuries”).

And fifth, ZombieBox can prove resulting damages from these statements, at least where admissible evidence establishes ZombieBox had to cancel or refund an order after a customer informed ZombieBox about receiving a warning from Generac, such as the aforementioned instance. It may be that ZombieBox will not establish all five elements for every claimed loss of business expectancy or contractual relationship. But because there is at least a conceivable instance where all five elements are met, summary dismissal of the entire claim will be denied.

**C. Causation of Damages**

For each of ZombieBox’s claims, Generac argues that ZombieBox “has not proffered any admissible evidence that Generac’s accused statements *caused* the damages” allegedly sustained by ZombieBox. (Doc. 88 at 11.) Specifically, Generac asserts that “[a]lthough Zombiebox has alleged it believes some consumers did not buy a Zombiebox due to Generac’s accused statements, Zombiebox has not produced any admissible evidence supporting or proving that belief.” (*Id.* at 12.)

First, as to the defamation claim, ZombieBox does not need to show Generac’s statements impugning the safety of ZombieBox’s product caused damages because a jury could reasonably conclude the statements are libelous per se. “In Arizona, a publication which impeaches the honesty, integrity or reputation of a [plaintiff] is libelous per se, and actionable without proof of special damages because damages are presumed.” *Peagler v. Phoenix Newspapers, Inc.*, 560 P.2d 1216, 1223 (Ariz. 1977) (citations omitted). Because

Generac's statements can be interpreted as impeaching ZombieBox's reputation, a jury could find Generac liable for defamation even in the absence of evidence that these statements caused any harm apart from the reputational injury.

Second, as to the trade libel and tortious interference claims, both require proof of damages. *ZombieBox*, 721 F. Supp. 3d at 804; *Wolf Designs*, 635 F. Supp. 3d at 799. For trade libel, a plaintiff need only show that the defendant's conduct was a "substantial factor" in bringing about a pecuniary harm, Restatement (Second) of Torts § 622A (trade libel); and for tortious interference, that the defendant's conduct was a "significant cause" of the terminated contract or business expectancy, *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1024 (9th Cir. 2000). As noted, admissible business records show that at least one customer who purchased a ZombieBox enclosure had to be refunded after Generac told the customer that using the enclosure would void Generac's warranty. A jury could reasonably find Generac's allegedly defamatory statements were a substantial factor in, and significant cause of, the customer's decision to seek a refund, which constitutes both pecuniary loss and a terminated contract or business expectancy.

Accordingly,

**IT IS ORDERED** Plaintiff's Motion to Strike Exhibit A of Defendant's Reply Brief and Defendant's Responses and Objections to Plaintiff's Controverting Statement of Facts (Doc. 108) is **GRANTED IN PART** striking Defendant's Responses and Objections to Plaintiff's Controverting Statement of Facts and otherwise **DENIED.**

**IT IS FURTHER ORDERED** Defendant Generac Power System Inc.'s Motion for Partial Summary Judgment (Doc. 88) is **DENIED**.

…

…

…

…

…

…

**IT IS FURTHER ORDERED** the parties shall prepare and file a Joint Status Report indicating their readiness for trial, anticipated length of trial, any remaining possibility of settlement, and whether the parties would like to request the appointment of a Magistrate Judge to conduct a settlement conference. The Joint Status Report shall be filed no later than **October 9, 2026**.

Dated this 16th day of September, 2026.

Honorable Roslyn O. Silver
Senior United States District Judge